The next matter, No. 151337 United States v. Edwin Ramon Cabrera-Rivera Ms. Connolly, good morning. May it please the court, my name is Julie Connolly and I represent the defendant appellant in this matter. Mr. Counsel, could you speak up a little bit, please? Edwin Cabrera-Rivera, who I'll refer to as Mr. Cabrera. I'd like to reserve three minutes at the end of my argument to respond. Thank you. This case is about, Your Honor, the fact that the criminal conduct that my client pled guilty to is really nothing much more than sexting and a clandestine, consensual, romantic affair and it simply does not warrant the imposition of the 21-year sentence that the court imposed here. I submit to you that the waiver of appeal provision in the plea agreement should not be enforced because it was not entered into knowingly and voluntarily because of the mistakes that were made prior to the plea colloquy that were first revealed during the plea colloquy when the magistrate judge questioned the parties about whether or not a term of supervised release was required in this case. The facts here show that a law student was involved in representing the defendant. It's not clear from the record how involved the law student was in actually negotiating the plea, but the plea colloquy makes it very clear that the lawyers did not understand that any term of supervised release... Excuse me, Counselor, but do you make that point a little clearer? You say a law student was representing... Yes, well, it was under the supervision of the federal public defender, but there was a law student who was there and was introduced at the beginning of the plea colloquy and she introduced her client and she began the colloquy with the court. Does the record show the name of the student and what year the student was in? It represents the name of the student. It was a woman by the name of Gonzales. It doesn't say what year she was. And I'm not saying that she negotiated the plea agreement by herself, but it just raises a question. And the biggest sort of the overarching theme here is that there were a series of little mistakes that were not inconsequential and that raised a question about how much my client understood when he accepted the terms of this plea agreement. So the federal defender spoke up when the judge raised the question about whether or not there was a mandatory minimum term of supervised release of five years because the offense involved a minor. Counsel, let me ask you, if we were to accept your argument that the appellate waiver was not entered into knowingly and voluntarily and hence the waiver of appeal would not be a bar to the argument you're trying to raise, you would have to deal with plain error in asking for the various forms of relief you're asking for. Isn't that correct? Well, you know, that's a question, that's something I've been thinking a lot about because I'm not sure how much the Teeter analysis and the plain error analysis sort of overlap or conflict here because... Well, that's an important question. What would you gain in terms of what you ultimately have got to deal with if we were dealing with plain error rather than miscarriage of justice? What would I gain? In terms of what you have to argue in trying to get the relief that you're seeking. In terms of what I have to argue, I argue in my papers and I think that it's accurate that the analysis for the court is largely overlapping, that to demonstrate a miscarriage of justice, you have to show the same type of egregious error that would affect the substantial rights of the defendant significantly so that it causes, what is the rule, the fourth factor is a lack of confidence in the reputation and integrity of the court. So I would submit that the analysis in terms of the substance is largely overlapping and whether you put it in the framework of Teeter, that you're not going to enforce a waiver of appeal, or you put it in the framework of plain error, the substantive analysis is the same and the result is the same. And the reason why I think that the Teeter analysis prevails over plain error is that in a case like this where the defense attorney does not object to the sentence that was imposed, because the sentence that was imposed was the 108 months that the sentence was recommended, the 108 months of imprisonment was imposed and that was what was recommended in the plea agreement, so it makes sense that the defense attorney would not have objected to that. And so I think that the right result then is to say, well, she didn't object because there was a waiver of appeal provision, but the waiver of appeal provision should not be enforced here and you go down that road. But as I said, I think the plain error analysis is substantively the same. Counsel, you were asked by an order of the court to address the question about the scope of the appellate waiver and whether under our RoHS precedent and others, whether the scope of the appellate waiver would prevent you from challenging the term of supervised release and the conditions of supervised relief. Would you address that, please? Yes, Your Honor. I think that that decision and the cases on which it relied and the case that has applied it that I discussed in my supplemental brief in response to your order makes a distinction between challenges to conditions of supervised release and challenges to terms of supervised release. Well, we can see that because the term of supervised relief, terms of supervised release, is every bit as much a part of the sentence as the conditions of supervised release. And that's exactly why I think there's a distinction, that a term of supervised release is part of a sentence and a defendant who pleads guilty and waives a right to appeal knowing that a certain sentence is going to be imposed has to know what the length of that sentence is going to be or could be because it's a deprivation of his or her liberty. And in all of those cases, each time the defendant actually knew that there was going to be a term of supervised release that would be imposed following the term of imprisonment. In fact, the government in its reply supplemental brief appended the sections of the plea agreement in each of those five cases. And the sections that the government appended included just the sentence recommendation provisions which did not include a term regarding supervised release. But I went back to the dockets and I pulled out the pages of the plea agreements that the government did not include in its appendix, in its addendum to its brief. And in each one of those cases, the plea agreement has a maximum penalty provision that explicitly included the mandatory term of supervised release. And that's a fundamental difference to fund those cases and my case in which the recommendation was no supervised release. Are you referring to paragraph 2, maximum penalties? Yes. Yes, okay, thank you. And I would actually ask for the court's permission to submit. Well, Cindy, we do have in this case a mandatory term of supervised release, do we not? We do, and that's the whole point is that the attorneys misunderstood that. The defense attorney thought that there was no supervised release at all. The assistant U.S. attorney told the court that there was only a term of supervised release no more than three years as the maximum penalty. And the judge said, I think you might be wrong because there's a minor involved. And during the change of plea colloquy, the lawyers said, well, give us a minute. And they pulled out their phones and they quickly did some research. And they figured out that the judge was right. And, in fact, there was a mandatory minimum term of five years of supervised release. So they then went back and they hand changed. But aren't you returning now to your non-involuntary argument rather than the scope of the appellate waiver? Yes. So, okay, I thought we were talking about the scope of the appellate waiver and whether that scope would include any objection to a term of supervised release. Okay, so my argument with respect to that is that even reading the cases, even where the term of supervised release is not explicit in the sentence recommendation provision, in all of the plea agreements, the maximum penalty provision includes a term of supervised release. But that's this case too, right? This case, though, it did only for three years. That's what I'm trying to say, is that it was a mistake in the plea agreement. They thought there was going to be a term of supervised release of no more than three years. I don't understand your argument, to tell you the truth. Because, as I understand this, paragraph 2, which establishes the maximum penalties, has a supervised release. Then paragraph 9 does not include any supervised release. And apparently that was the agreement because in paragraph 11, the waiver of appeal, you say that there will be no appeal if the sentence is included with the terms and conditions set forth in the sentencing recommendation, which did not include supervised release. That's the way I understood this case. That's how I understood the case too, Your Honor. That's not the way I hear you arguing. Well, that's because in response to your question, your order for supplemental briefing after the Rojas decision, which specifically addressed the issue of whether a term and condition of supervised release had to be explicit in the sentence recommendation provision. Those cases then, I went back and looked at more carefully and realized that there were sentences, waivers of appeal provisions were upheld even though a supervised release term was not in the sentence recommendation provision. I would argue to the court that it always should be, that the rules should be, that there should be explicit in the sentence recommendation provision a term of supervised release. Even if it's not in a specific term, the fact that there will be supervised release should be included in the sentence recommendation provision. But in those cases that are discussed in my supplemental brief where they upheld a waiver of appeal provision, even where the sentence recommendation provision did not include an explicit term of supervised release, the plea agreements did include an explicit term of supervised release in the maximum penalty provision. So when you look at the contract as a whole, the plea agreement as a whole, you can understand how the court would have said you knew that in your sentence, you defendant included a term of supervised release. And significantly in all of those cases, the defendant didn't argue the term of supervised release. The defendant only argued the conditions. Here, I would submit to the court that the plea agreement reflects that the defendant did not understand that there would be a term of supervised release that would impact the sentence recommendation that he was conditioning his waiver of appeal on. Thank you. Your time is up. Thank you. Judge Lynch, do you wish to ask questions now? Yes, I do. Counsel, as I understand it, the magistrate judge called to the parties' attention the fact that there was a five-year mandatory minimum. Counsel consulted and did research and came back and agreed with the court. And thereafter, there was no attempt to withdraw the plea agreement in light of that fact, which was known to the defendant as of that time. Is that correct? That's correct, Your Honor. Okay. Thank you. If I could just add, I would submit, Your Honor, that there was no attempt to withdraw the plea agreement. But the magistrate judge also said to Mr. Cabrera, that's the law, Mr. Cabrera, there's nothing your lawyer can do about it. And, in fact, there was something the lawyer could have done about it. The lawyer could have withdrawn the plea agreement, as you just suggested. But the judge said there was nothing the lawyer could do about it. And I would submit that that undermines significantly the voluntariness of Mr. Cabrera's waiver. Counsel, I would think the last thing your client would want to do would be to withdraw the plea agreement and then face the possibility of a 15-year mandatory minimum for the production. I think, Judge Lopez, that by withdrawing the plea agreement, that doesn't necessarily mean that my client would have agreed to go to trial. They could have simply gone back to the negotiating table and said, this is a material change in the terms of a bargain that we struck. Sure, that could have happened. But he would have been exposing himself to that possibility. If nothing, it obligates the government to try to enter into new negotiations, right? It would have obligated both sides to enter into new negotiations. Really? The government would have been required to do that? Oh, no, no, no. I just meant the government wouldn't have had to at all. I'm sorry, misunderstood. I thought you said if they wanted to get a new deal, a new agreement, they both would have had to sit down at the table again. My point is that that was a material change to the bargain that he struck. He was thinking that he had given up a mandatory minimum of 15 years in prison in exchange for an agreement of nine years with no supervisory lease. The plea agreement said he could have had up to three years of supervisory lease. That still would have been a maximum sentence of 12 years, which is less than the mandatory minimum. So that was a good deal that he thought he struck. I also think it's worth pointing out that another mistake in the plea agreement was that the government, or the agreement rather, indicated that a different provision of 2252 applied here that carried a penalty of a minimum of five years and up to 20 years of imprisonment versus what he actually pled guilty to was a sentence that carried no mandatory minimum and a maximum of 10 years. Thank you. Thank you. Ms. Magoniatis, good morning. Good morning. Or good afternoon. Good afternoon. May it please the Court, Julia Magoniatis for the United States. Can I maybe help you think how I'm thinking about and help me out with this situation? Yes, Your Honor. Am I correct that a plea bargain agreement is a contract or is interpreted under contract rules? Yes, Your Honor, its interpretation is under contract rules. Okay, the waiver of appeal indicates, that's paragraph 11, that the plaintiff waives his right to appeal provided the defendant is sentenced in accordance with the terms and conditions set forth in the sentence recommendations, which is paragraph 9. The sentence recommendation only speaks about the term of imprisonment, does not speak about anything else. Let me see if there's anything else I forgot, probably did. That's it. Even though early on in that same document it indicates that there could be other conditions including supervised release. So apparently somebody struck a bargain, somebody wrote a provision in this alleged contract, which did not include supervised release. Why is it not binding, at least in terms, let's start first with the waiver of appeal. Your Honor, if I understand your question correctly, it's why should this waiver, the scope of this waiver, include the conditions and the term of supervised release, if indeed the sentencing recommendation does not have a recommendation thereto. And the government would point the court to various precedent, which was cited in both our supplemental and our opening brief, that this exact type of sentencing recommendation, taken into consideration with this same language of the waiver appeal, has been held to encompass appeals dealing with conditions of supervised release, even where the sentencing recommendation is silent, where there is no recommendation. What this plea agreement shows is the agreement between both parties that the term of imprisonment, that's the condition precedent, the term of imprisonment of 108 months, was what triggers the appeal. Likewise, Your Honor, the sentencing recommendation doesn't speak to restitution, it doesn't speak to fines, showing that it was the party's intent that if the defendant received this 108-month term of imprisonment, that was what would trigger the appeal, the waiver of appeal, which is a voluntary appeal for his judgment and sentence. And as this court has stated in the Santiago case, in the Rojas case, that term sentence encompasses not only the term of imprisonment, but the term of supervised release and its intended conditions. Just following up on Judge Troia's question, I mean, the waiver of appeal, I'm just repeating Judge Troia's question because I share his concern, the waiver of appeal says if the defendant is sentenced in accordance with the terms and conditions that are set forth in the sentence recommendation's provision in this pre-agreement, you then look at the sentence recommendation and all it talks about is the term of imprisonment. It doesn't say a word about, now it's true, terms of imprisonment, conditions of supervised release, fines, forfeiture, that can all be considered part of a sentence, but the sentence recommendation doesn't say a word about any of those. So how can you reconcile the language of the waiver of appeal? We're not talking about our precedents now. Just focus on the language. How do you reconcile the language in the waiver of appeal with the terms of the sentence recommendation? Forget the precedents. Just as a matter of language, how do you reconcile those two? Yes, Your Honor, because that was the only agreement, that's the joint agreement that the parties came into under this plea agreement, to recommend a 108-month sentence. The fact that there is no language discussing supervised release or restitution or fines does not mean that they're necessarily prohibited. But Your Honor, there is discussion in this plea agreement about Yes, Your Honor, in paragraph 2 it states what the parties did. There is discussion by the parties and they don't include it into what they agreed to. Agreed, Your Honor. Yes, because the sentencing recommendation, as you can see, when you look at the plea agreement as a whole, and when we look at all of the plea agreements that I referenced in our supplemental, it always includes the maximum penalties, which was no different in this case. In this case, the plea agreement did include the maximum penalties, and of course there was an error that was subsequently remedied at the change of plea hearing. But in all of the other plea agreements, there is a sentencing recommendation, which has always been limited. The parties are limiting that recommendation to the terms of imprisonment, because that is the condition precedent that they see fit to trigger the waiver of appeal. You could have a sentence where you don't have any incarceration, but you could have supervised release. Yes, I agree that there could be two different things. But, Your Honor, in this case, this is what the parties agreed to. And in the Rojas case, it was very similar. There was a term of a sentence, and then they said that the parties made no stipulation as to the conditions of supervised release, but notwithstanding, this court held that the waiver applied, even when, and I believe the court said, even when there is no mention of the supervised release conditions in the sentencing recommendation. It is the government's position that that case applies, it falls squarely within the case here. Because if the court, where the parties had made no stipulation whatsoever, and that's the only difference the sentencing recommendation from the Rojas plea agreement has with Mr. Edwin Cabrera's plea agreement, is that the parties make no recommendation as to the supervised release. That's the only different sentence. Yet, this court held that challenges to that supervised release were precluded by the waiver of appeal. Counsel, is there some reason the government chooses not to address terms of, say, the term of supervised release as part of the agreed upon sentence recommendation or conditions of release? I understand term of supervised release and conditions are very different, but is there some reason that apparently, routinely, the government never chooses to address those issues as part of the agreement, as part of the sentence recommendation? Your Honor, what can be seen through the series of cases that have been discussed is that neither party really brings it to the table at that point. It appears that the trigger is the term of imprisonment. However, at all times, the defendants are aware, they're made aware not only by the plea agreement, but also by the colloquy, the PSR, that obviously there's conditions of supervised release and a term of supervised release. It's just that there's no joint recommendation in the agreement itself. And in this case, it's no different. You're dealing with, you said, a contract. Under contract provisions, you would have all the conditions of that contract, and these are important conditions of the contract. Why would you explicitly decide not to put them in the written agreement, except to maybe induce the other party to overlook them? Your Honor, that's not the government or, I would say, the defendant's approach in this. It's my approach. Taken, Your Honor. However, in this case, just like the Rojas case, for example, which had that one sentence, it's that there's no stipulation. There's no agreement. The parties aren't coming to an agreement of what the term or the conditions should be, so it is not included. In Rojas, if my memory serves me correctly, and I can get the correct language of the plea agreement, it talks about the sentence, the term of imprisonment, and then it said that the parties would not make any recommendations as to the conditions of supervised release. That's explicit, but that's the same issue here. The parties here are not making any recommendations as to the term of supervised release, and nothing in the record supports the appellant's contention that he didn't believe supervised release would happen. Not only did the magistrate explain during the change of plea hearing that after you serve your sentence, when you're in the free community, that you will be subject to a term of supervised release, but in the defendant's own sentencing memorandum, he acknowledges that the 108-month sentence is reasonable, and additionally, he will be subject to at least five years of supervised release. Does that include that the AO sees children? In the sentencing memorandum, not only did the defense attorney recognize that there would be at least five years of supervised release, but that there would also be associational prohibitions, and she specifically states, and if we look at the sentencing memorandum, that these associations also include that he will have to go through testing and adjustments in order to be able to spend time with his children, initially supervised and later, depending on the results of the testing, hopefully unsupervised. So prior to even going into the sentencing hearing, we have a sentencing memorandum from the defendant noting that he will be subject to at least five years, and among the conditions would possibly be conditions restricting access to his children. Now, we fast forward to the sentencing hearing, and not only did the court impose a condition, but carved out two special exceptions, and those special exceptions were the incidental contact to day-to-day life and the children as they relate to his family. At no point did he object to this, and when the district court noted that he received his end of the bargain, the 108-month sentence, that the waiver of appeal had been triggered, at no point was there any objection to that, too, because that was precisely what this bargain was, a bargain to take 15 years' mandatory minimum off the table, which charge also includes a five-year minimum of supervised release. In no situation, unless he goes to trial and is found guilty, is he ever going to be subject to less than five years of supervised release. And this deal took the 15 years off the table, and then gave him a joint recommendation for nine years, knowing full well that there would be five years' minimum supervised release recognized as such by the defense attorney. So when the waiver of appeal comes up, there's no objection, because this is what the parties always intended to from the get-go, Your Honor. This was a very beneficial waiver, plea agreement. And now the defendant, what he's trying to do is, by stating that there may have been, the government agrees that there was an error in the plea agreement, it had the wrong term, but it was rectified, it was cured at the change of plea hearing. And at no case, at no time, whether it's at the change of plea hearing, when the report and recommendation came out, when the PSR came out with a correct term, when the amended PSR came out with a correct term, even in the sentencing recommendation, they recognized this mandatory five-year minimum. And at no point does he ever choose to withdraw his plea, because it's a beneficial plea. And the fact now that they're using this unknowing language to try to invalidate the waiver, it's the government's contention that the allegation and the remedy don't fit. If it's truly unknowing, and he didn't know what he was setting up for, the proper remedy would be vacating the plea, but opening him up to the 15-year mandatory minimum. Instead, this argument about unknowing, which is belied by the record, and the defense counsel's own submissions to the court prior to sentencing, is an attempt for this court to find that the waiver of appeal should be set aside as a miscarriage of justice. However, it's the government's contention that the plea was both knowing and voluntary, that the waiver of appeal was both knowing and voluntary, and its enforcement would not result in a miscarriage of justice. Counsel, I wonder if you would take a look at Conditions 2 and 3 of Supervised Release. Do you have those in front of you? In the judgment, Your Honor, or in the challenged conditions on appeal? In the judgment. In the judgment. Okay. Condition 2 ends with this language, the only exception to this condition, and they're talking about advance approval by the probation officer, personal contact with minors under the age of 18, and so forth. And it then says, the only exception to this condition relies on the incidental contact in normal life with minors and those that relate to his relatives, which clearly would include his children. Condition 3, which is the one that talks about not residing, be in the company, date of socialized by himself with a child or children below the age of 18 unless previously approved by the probation officer, and after a third-party risk has been duly assigned. That condition does not include the exception that was set forth in Condition 2. Are you saying that in the sentencing memorandum submitted by the defense that they agreed to Condition 3 as stated, which did not contain an exception for contact with his own children? Are you saying that they agreed to that? Your Honor, the defendant's statements recognize that there will be conditions that restrict his ability to see his own children, initially supervised and later, depending on the results of his testing, possibly unsupervised. And that also goes hand-in-hand with what the probation officer stated, what happens in these sort of cases, and when they do allow defendants to reside and spend time with their children. So it's the government's position that they're not inconsistent. And the defendant actually noted that there would be restrictions here. In any event, if I may just finish my thought, Your Honor, I see that I'm out of time. In any event, none of these conditions rise to the level of a miscarriage of justice because it's important to note, or even plain error for that matter, it's important to note that there is always a remedial avenue for which the appellant can clarify these conditions, can seek their modification. Under 3583, he can always go to the court to have these conditions modified and explained. It's not as if the sentence which is final, and then you have a 2255, and that's the end. Here there's always an avenue. There's a remedial regime in the statute that the defendant can always seek the court's intervention. But don't you agree, counsel, we have said that there are some conditions which are so problematic as imposed that you do not avoid the consequences of those problems simply by saying, well, later they can be changed. That's not always a sufficient response, is it? Your Honor, I agree that it's not always a sufficient response, but given the facts of these cases, and if we look at this court's decision in the United States v. Mercado case where it specifically stated the conditions imposed by the district court that did not impose an outright ban on the defendant's ability to associate or even live with his minor children were not an abuse of discretion when, and this was for a SORNA case, the offense conduct was not a sex conduct. Clearly he had a previous sex conduct case if it was SORNA. But in that specific case, the fact that there is no outright ban and then the court also talked about the avenue for redress and here the fact that the defendant knew that these were coming and did not object to them, it is the government's position that it would not be a miscarriage of justice to dismiss this appeal or that his, as we stated in our brief, that his appeal would fail under the plain error standard. Thank you. Thank you, Your Honor. Judge Lynch, would you wish to ask questions of counsel? Thank you, but no. Thank you. Thank you, Your Honors. I want to just address a couple of quick points. First of all, with respect to the conditions of supervised release that were imposed that we are challenging, Condition 2 does not actually make an exception. It makes an exception for his relatives, but the contact is actually personal contact with minors under the age of 18 through mail, letter, telephone communications, audio, visual, computer, electronic devices, social networking sites, or third parties unless approved in advance. So there is no exception for him to have contact with his own children. This is contact through mail and electronic devices and the telephone. That's number two. Number three doesn't give him any exception at all for his relatives. So there is no exception made here for contact with his children as the government just represented to you. Secondly... So would you respond to opposing counsel's point that in a sentencing memorandum submitted by the defense, these conditions were acknowledged without objection? Well, they were acknowledged without objection. The defense attorney at the time did not suggest that the court was going to... did not endorse the fact that the court was going to impose all of those. A recommendation by the probation office, which we have e-mailed from the probation office in Puerto Rico saying that these are routinely recommended. So the defense attorney's failure to object to them to a routine recommendation does not mean that the defense attorney accepted them... accepted the fact that the judge would necessarily impose them. The second point I wanted to clarify is that the government is wrong when the government states that the magistrate judge made it clear that a term of supervised release would follow the term of imprisonment. If you look at the joint appendix, pages 38 and 39, that's at a time in the plea colloquy where the judge is having the lawyers look for whether or not there is a mandatory minimum term. And she explained to the defendant the concept of supervised release. She did not say... It was just in general, this is the concept, this is what the supervised release is. Then it's a few pages later, I think it's page 41, where the judge has determined that there is a mandatory minimum. Everyone's agreed. And then she says... All she says to Mr. Cabrera is, Attorney, you explained it to your client. And then she said to him, Sorry, Mr. Cabrera, that's what the law says. There's nothing you can do about it. And then she talks about what I want you to understand is that you have a possible maximum sentence of a life of supervised release. She did not say you have a mandatory minimum five years that would absolutely be imposed after the 108-month sentence. And I would just implore you, Your Honors, to exercise your authority to see that justice is done and correct this sentence that clearly is not commensurate with the criminal conduct that occurred here. Thank you. Thank you. Wait a minute. Judge Schlicht, do you have any questions? No, thank you very much. Very good. Thank you, Your Honor.